**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAROLD WAYNE MALLARD,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:17-cv-1212 - JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF HAROLD WAYNE MALLARD AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Harold Wayne Mallard asserts he is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny his application for benefits. Because the ALJ failed to apply the proper legal standards, as discussed below, Plaintiff's motion for summary judgment is **GRANTED** and the administrative decision is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

On July 22, 2013, Plaintiff filed an application for benefits, alleging disability beginning January 1, 2011. (Doc. 10-6 at 2) The Social Security Administration denied the applications at both the initial level and upon reconsideration. (*See generally* Doc. 10-4) After requesting a hearing, Plaintiff testified before an ALJ on March 14, 2016. (Doc. 10-3 at 30, 38) The ALJ determined

1

Plaintiff was not disabled as defined by the Social Security Act, and issued an order denying benefits on April 14, 2016. (*Id.* at 23-31) Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on July 12, 2017. (*Id.* at 2-7) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.     Relevant Medical Evidence**[1]

In 1996, Plaintiff was diagnosed with Parkinson's disease. (Doc. 10-4 at 8) His symptoms included shaking and micrographia. (*Id.*)

In December 2012, Plaintiff reported he "was assaulted as he was coming out from a grocery store." (Doc. 10-8 at 34) He stated that "[a]s he was trying to go buy his groceries, he was hit in the head multiple times and passed out, [and] claimed he was also hit, punched and kicked multiple times as he was down on the ground." (*Id.*) Plaintiff said after he regained consciousness, he went to Emanuel Hospital, where he had a CT head scan that was negative. (*Id.*) The following day, his daughter took him to the emergency room of Doctor's Medical Center "with a concern of having right elbow pain." (*Id.*) He exhibited "some degree of decreased tone and strength, especially with extension of the right thumb and right middle finger and right forefinger." (*Id.* at 35) Dr. John Casey noted an x-ray of Plaintiff's right elbow demonstrated "a comminuted displaced radial head and neck fracture." (*Id.* at 36) Plaintiff received "a long arm splint," and was told he would need to have surgery for his shattered elbow. (*Id.* at 56) However, Plaintiff reported that "he could not afford the co-pay for the surgery." (*Id.* at 37)

---

[1] The Court's analysis below focuses upon Plaintiff's physical residual functional capacity. Thus, while the Court has reviewed the entirety of the record, this summary of the medical evidence focuses upon the objective evidence and clinical findings related to Plaintiff's physical impairments.

3

In January 2013, Plaintiff visited an emergency room to have his splint replaced. (Doc. 10-8 at 10) Dr. Dan Anghelescu determined imaging of the right elbow showed "a persistent impacted radial head fracture with overlying cast," and x-rays of the wrist showed "[p]ositive ulnar variance without associated degenerative change." (*Id.* at 5-6) The treatment notes indicated Plaintiff had an "old, dirty plaster splint removed in triage," which was "no longer effectively supporting his injury." (*Id.* at 8, 10) Plaintiff had a decreased range of motion, swelling, and tenderness in the right wrist. (*Id.* at 11) No evidence of a neuromotor function deficit was noted. (*Id.*)

In July 2013, Plaintiff "was riding his bicycle unhelmeted when he was hit on his ride side by a vehicle traveling approximately 30 mile[s] per hour." (Doc. 10-9 at 41) Plaintiff "was able to get back up onto his bicycle and rode to his court appointment," but "[w]hile at the drug court, he started to feel dizzy and so EMS was called." (*Id.*) Plaintiff complained of "right elbow, flank, hip, and knee pain." (*Id.* at 42) Upon examination, he exhibited "a significant amount of right elbow tenderness." (*Id.*) He had a "[n]ormal range of motion," though his strength was "4/5 in the hand." (*Id.*) Plaintiff had an x-ray of his right elbow, which showed a "[c]hronic fragmented ununited radial head fracture" and "a moderate amount of deformity which [made] interpretation difficult." (*Id.* at 38, 42) Plaintiff reported he "never had [the] fracture treated due to lack of insurance." (*Id.* at 42)

At a follow-up appointment in August 2013, Plaintiff had "[i]mproved [right] hand motion," though he continued to have "limited supination" with the elbow. (Doc. 10-9 at 52) The treatment notes indicate Plaintiff had a "weak grip," though his sensory functioning was intact. (*Id.* at 54) Plaintiff began doing physical therapy for his elbow, which he said was helpful. (*Id.* at 64)

Dr. Robert Wagner performed "a comprehensive internal medicine evaluation" on October 27, 2013. (Doc. 10-9 at 74) Plaintiff "complain[ed] of some problems with balance and vertigo," which Dr. Wagner opined were evident during the examination. (*Id.*) In addition, Plaintiff reported he had "a history of tremors since childhood which were worse stress." (*Id.*) Dr. Wagner observed:

> The tremor itself is of fairly high frequency and high amplitude, particularly in the left hand, with very little tremor noted in the legs. There appears to be some cogwheeling of the arms, however this is difficult to differentiate from the ongoing tremor of the arms. It does not appear to be any cogwheeling in the legs.

(*Id.* at 74-75) Dr. Wagner noted Plaintiff's dexterity was "somewhat impaired by the gross tremors in

the hand but he [was] able to oppose fingertips to thumbtips well." (*Id.* at 75) He observed that Plaintiff had a "normal finger-to-nose [test] with the exception [of] the tremor." (*Id.* at 76) He found Plaintiff's motor strength was "5/5," though his "right arm [was] slightly less strong than the left." (*Id.* at 77) Dr. Wagner observed that Plaintiff's gait was normal, but Plaintiff had a positive Romberg test and "some lurching as he began attempting to walk on toes and heels and was not required to finish." (*Id.* at 76) Dr. Wagner opined that "[b]ased on [his] objective findings," Plaintiff could lift and carry "20 pounds occasionally and 10 pounds frequently, given the problems with tremors and balance." (*Id.* at 78) Dr. Wagner determined Plaintiff could "reach and handle but [was] going to have difficulty with fingering, given the tremors in [the] hands," and as such believed fingering should "be limited to occasionally." (*Id.*) Finally, he concluded Plaintiff should never balance and "should avoid working around unprotected heights and heavy machinery, given the positive Romberg test." (*Id.* at 78-79)

Dr. Aimee Riffel performed a psychiatric evaluation on November 3, 2013. (Doc. 10-10 at 4) She observed that Plaintiff exhibited hyperkinetic psychomotor activity "due to… Parkinson disorder" and "noticeable tremors of the upper extremities." (*Id.*)

On November 18, 2013, Dr. David Hicks completed a residual functional capacity assessment. (Doc. 10-4 at 11-14) He opined Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally. (*Id.* at 11) According to Dr. Hicks, Plaintiff was limited in both hands with fingering (fine manipulation) but had no limitation with handling (gross manipulation). (*Id.* at 12) He opined Plaintiff should "[a]void even moderate exposure" to environmental hazards such as machinery and heights. (*Id.* at 13) Dr. Hicks determined that due to "Parkinson's disease and right radial head fracture," Plaintiff was limited to performing "light [work] with only occasional push [and] pull" with the right arm and "only occasional fine manipulation bilaterally." (*Id.* at 14) Dr. Hicks also believed Plaintiff had postural limitations and should never climb ladders, ropes, or scaffolds. (*Id.* at 11, 14)

In January 2014, Plaintiff visited Mercy Medical Center for treatment for pain, reporting the pain in his right wrist was a "6" on a scale of 1 to 10. (Doc. 10-10 at 13) The treatment notes indicate Plaintiff had "difficulty grasping [and] squeezing," and exhibited tenderness in his forearm. (*Id.*)

Dr. H. Pham reviewed Plaintiff's medical record and completed a residual functional capacity assessment on March 12, 2014. (Doc. 10-4 at 28, 32-34) Dr. Pham determined Plaintiff could lift and

carry 20 pounds occasionally and 10 pounds frequently and occasionally push and pull with the right arm. (*Id.* at 32-33) According to Dr. Pham, due to the prior radial head fracture, Plaintiff had postural limitations and could occasionally climb ramps and stairs; and never crawl or climb ladders, ropes, or scaffolds. (*Id.*) Dr. Pham also opined Plaintiff was limited with the right upper extremity to frequent reaching, occasional handling, and frequent fingering; and with the upper left extremity, he could do and occasional fingering. (*Id.* at 33-34) Dr. Pham indicated Plaintiff's bilateral fingering limits were "due to [his] tremors." (*Id.* at 28)

Dr. Lance Portnoff performed a psychological evaluation on April 22, 2014. (Doc. 10-10 at 22) Plaintiff and his wife reported that he had been incarcerated "for grand theft auto" between 1996 and 1999, and he had recently been in the county jail in 2013 for grand theft auto. (*Id.* at 23) Dr. Portnoff noted it was "unclear how he manage[d] to drive at all, with as profound a tremor as he [made] out in the current exam, unless of course he [was] exaggerating…" (*Id.*) Dr. Porntoff observed that Plaintiff "exhibit[ed] wild, flinging tremors, scattering the WAIS-IV blocks across the table," and wrote in "large, wavy strokes-magrographia instead of micrographia." (*Id.* at 24) Dr. Portnoff opined that Plaintiff's involuntary movements were "apparently exaggerated." (*Id.*) He noted Plaintiff refused to do the WMS-IV and Trails test, saying he could not "draw shapes or a line because he [was] too shaky." (*Id.*) In addition, Dr. Portnoff believed Plaintiff lacked credibility because he switched "between a rational person in the history and a 'demented' person in the direct exam, making non-sequitur responses." (*Id.* at 28)

Plaintiff visited Castle Family Health Center to establish care in July 2014. (Doc. 10-11 at 33) Plaintiff told Maricela Estrada, PA-C, that his tremors "worsened since he ran of meds" six months before. (*Id.*) Ms. Estrada observed that Plaintiff had a "[b]ilateral restring tremor." (*Id.* at 34; *see also id.* at 35) She prescribed Sinemet for Plaintiff's Parkinson's Disease, and referred him to a neurologist. (*Id.* at 36-37)

In August 2014, Plaintiff stated he was awaiting his neurology consultation. (Doc. 10-11 at 17) Ms. Estrada indicated that Plaintiff's neuro system was "negative" for tremors. (*Id.* at 18) However, she also observed in her examination findings that Plaintiff's fine motor skills were not normal due to a "rest tremor." (*Id.* at 20)

On August 26, 2014, Ms. Estrada completed a physical residual functional capacity questionnaire. (Doc. 10-13 at 62, 69) She noted Plaintiff had been diagnosed with Parkinson's, and his symptoms included a severe resting tremor, shortness of breath, and a chronic cough. (*Id.*) Ms. Estrada indicated these symptoms were "constantly" severe enough to interfere with attention and concentration required to perform simple work-related tasks. (*Id.*) According to Ms. Estrada, Plaintiff could frequently lift and carry less than ten pounds, but should never lift ten pounds or more. (*Id.* at 63, 70) She believed that Plaintiff was limited to grasping, fingering, and reaching for 10% of an eight-hour day, with both his left and right arms and hands. (*Id.*)

In October 2014, Dr. Kin-Chung Chan observed that Plaintiff had resting tremors and rigidity. (Doc. 10-13 at 74) Dr. Chan prescribed Sinemet and Amantadine to Plaintiff for his Parkinson's Disease. (*Id.*) The following month, Plaintiff reported the medication upset his stomach, and Dr. Chan instructed him to not take it with a full stomach. (*Id.* at 73) Dr. Chan observed that Plaintiff had "[r]esting tremor of both hands [with] cogwheel rigidity." (*Id.*)

In December 2014, Plaintiff had a physical exam that was "required for [his] Drug Rehab program." (Doc. 10-11 at 10) Ms. Estrada noted Plaintiff reported he smoked one pack of cigarettes per day, and he requested Chantix because he wanted to quit smoking. (*Id.*) She observed that Plaintiff had a "positive" neurological exam due to incoordination. (*Id.* at 11) In addition, Ms. Estrada indicated Plaintiff had a "[r]esting tremor." (*Id.* at 12)

In July 2015, Plaintiff sought treatment for chest pain and a cough, which was "chronic due to … COPD." (Doc. 10-11 at 8-9) He was again observed to have a "Resting Tremor." (*Id.*)

**B.    Administrative Hearing Testimony**

Plaintiff testified he was unable to work because he would "shake very bad" and it was "hard for [him] to get up and down." (Doc. 10-3 at 43) He said that he could not "even hold stuff," and his wife had to "practically feed[]" him. (*Id.* at 43-44) Plaintiff reported he could hold a cup of coffee, but had to do so in a specific manner that he demonstrated at the hearing. (*Id.* at 51) He stated he could push a button to talk on the phone, but was unable to text because he could not hit the buttons. (*Id.* at 45) In addition, he said he could "write [his] name but barely." (*Id.*)

He said that on a typical day, his wife would wake up him and he would move to the front

7

room of their home. (Doc. 10-3 at 45) He said that his wife would bring coffee—with a lid on it—and food, and he would spend the day there watching television. (*Id.*) He said he left the house to attend Narcotics Anonymous meetings, and as of the hearing had been clean and sober for 1,142 days. (*Id.* at 44) Plaintiff stated he also went to the grocery store with his wife sometimes, but he would either stay in the car because he could not "walk that far," or get an electric cart on which he could follow her around the store. (*Id.* at 44-45)

Plaintiff reported that he had a driver's license and would "drive a little bit but… it's not very good to drive." (Doc. 10-3 at 50) He believed that the last time he drove was a year prior to the hearing, and said his wife "always [drove] here and there." (*Id.*)

**C.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the application date. (Doc. 10-3 at 25) At step two, the ALJ found Plaintiff "has the following severe impairments: tremors due to Parkinson's disease [and] chronic obstructive pulmonary disorder (COPD)." (*Id.*) At step three, the ALJ opined these impairments did not meet or medically equal a listed impairment. (*Id.* at 26) Next, the ALJ determined: "[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can use his hands for handling and fingering frequently." (*Id.*)

With this residual functional capacity, the ALJ determined Plaintiff was "unable to perform any past relevant work." (Doc. 10-3 at 29) However, at step five, the ALJ found Plaintiff could perform "jobs that exist in significant numbers in the national economy." (*Id.* at 30) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 30-31)

**DISCUSSION AND ANALYSIS**

Plaintiff contends the ALJ erred in determining his residual functional capacity because "every single medical opinion regarding Plaintiff's physical limitations restricted his ability to handle only occasionally, opposed to frequently." (Doc. 14 at 10) In addition, Plaintiff contends "[t]he ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony." (*Id.* at 12) (emphasis omitted) On the other hand, Defendant argues that the ALJ identified "appropriate reasons for discounting Plaintiff's subjective complaints" and "properly considered medical opinion evidence of

record." (Doc. 18 at 15, 20) (emphasis omitted) Therefore, Defendant contends that the "RFC is supported by substantial evidence and should be upheld." (*Id.* at 24)

**A.     Plaintiff's Credibility**

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

In general, factors that may be considered by an ALJ in assessing a claimant's credibility include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities when weighing the claimant's credibility).

The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 10-3 at 27)  However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." (*Id.*)  The ALJ addressed Plaintiff's level of activity and the objective medical record related to Plaintiff's symptoms. (*Id.* at 27-28)

     1.     Plaintiff's level of activity

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this

9

fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603). For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility where the claimant alleges she is unable to maintain attention or concentration. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Similarly, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant participates in community activities, gardens, and exercises. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). However, an ALJ must make a specific finding that the daily activities are transferable to a workplace to refute a claimant's allegations of disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2008).

The ALJ observed:

> Although the claimant testified that his tremors have rendered him unable to use his hands, his reported levels of activity contradict this testimony. For example, at a consultative evaluation with Lance Portnoff, Ph.D., he told Dr. Portnoff that his tremors are so bad that he cannot pick up a block; yet, just one year earlier, he was reportedly arrested for vehicle theft, which implies that he was able to drive a vehicle at that time despite such tremors (10F/9). Moreover, at the hearing, he testified that he does indeed drive, just not too much. He also testified that he is able to write his name, hold a cup of coffee, and smoke cigarettes. He has smoked for 40 years. Such behaviors are inconsistent with the severity of tremor alleged.

(Doc. 10-3 at 27) Plaintiff contends these activities do not undermine his credibility, and that the ALJ "mischaracterizes these functions." (Doc. 14 at 14)

Notably, as Plaintiff contends, the ALJ misrepresents the evidence related to his level of activity. Plaintiff did not, in fact, tell Dr. Portnoff he was unable to pick up a block at the consultative examination. Dr. Portnoff observed that Plaintiff "exhibit[ed] wild, flinging tremors, scattering the WAIS-IV blocks across the table," and noted Plaintiff only declined to do the WMS-IV and Trails test because he could not "draw shapes or a line because he [was] too shaky." (Doc. 10-10 at 23-24) Though Dr. Portnoff questioned whether Plaintiff was exaggerating the tremors, the ALJ did not properly summarize the evidence related to the consultative examination.

The ALJ also fails to explain why he believes Plaintiff's arrest in 2013 for automobile theft supports a conclusion that the tremors are not as disabling as Plaintiff described. There is no information regarding how long Plaintiff drove, the distance, or even how the vehicle was stolen, such that the Court can determine whether Plaintiff was required to use his hands for grabbing or grasping

10

for a significant time. In addition, Plaintiff testified that he did have a driver's license and he could "drive a little bit," but believed the last time he drove was a year prior to the hearing—which would mean he last drove in 2015. (*See* Doc. 10-3 at 50) This is consistent with Plaintiff's testimony that "as time goes on," his symptoms were worsening. (*Id.* at 45) Given the limited evidence, the Court is unable to find that Plaintiff's ability to drive a vehicle in 2013 contradicts his testimony concerning his tremors.

In addition, the ALJ fails to address how Plaintiff's ability to write his name, hold a cup of coffee, and smoke cigarettes undermine the testimony regarding the severity of his tremors. The ALJ ignores the fact that Plaintiff testified he was "barely" able to write his name and must hold a cup of coffee in a specific manner that he demonstrated at the hearing. (*See* Doc. 10-3 at 45, 51) Moreover, the ALJ failed to find these limited activities could be transferred to a work setting. As a result, Plaintiff's level of activity was not clear and convincing evidence to discount his credibility regarding the severity of this tremors. *See Orn*, 495 F.3d at 639 (the ALJ erred rejecting a claimant's credibility where his "activities [did] not meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting). Thus, Plaintiff's level of functioning and activities of daily living do not support the adverse credibility determination.

2. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision

11

solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

Importantly, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The ALJ determined "the objective medical record does not document severely limiting tremors or any other symptom of Parkinson's disease." (Doc. 10-3 at 27) In support of this conclusion, the ALJ noted:

> Upon examination in January of 2013, the claimant exhibited no neurological deficits (1F/7). Later that year, he was hit by a car when riding his bike and sustained injuries to his elbow, forearm, and flank; yet he was able to ride away afterward (3F/6). At the hospital, he exhibited normal ranges of motion, largely undiminished strength, and no neurological deficit (3F/7). Upon examination in October of 2013, he exhibited tremors, but nonetheless, he was able to sit comfortably without needing to move around, get on and off the examination able without assistance, bend over at the waist and remove his shoes and socks, and oppose all fingers to thumbs (7F/4). He also demonstrated normal gait, station, and finger-to-nose coordination despite tremor (7F/5). Other but not all examinations have been negative for tremors and gait disturbance (12F/10, 12, 17).

(*Id.* at 27-28)

Significantly, however, the ALJ engaged in a selective reading of the medical record in supporting his conclusion, and again misrepresents some of the evidence. For example, though the ALJ indicated that in January 2013 Plaintiff had "no focal neurological deficits," the hospital's treatment notes from the same examination also indicated Plaintiff had a decreased range of motion, swelling, and tenderness in the right wrist. (Doc. 10-8 at 10) In July 2013, after Plaintiff was hit by the car, he rode away on his bike to his court appointment—but EMS was called once he was at the drug court. (Doc. 10-9 at 41) Upon examination, Plaintiff had a normal range of motion but exhibited "a significant amount of right elbow tenderness" and there was "a moderate amount of deformity" seen in the images of his elbow. (*Id.* at 38, 42) Thus, the ALJ ignored evidence of decreased ranges of motion

12

and tenderness that was observed in January and July of 2013.

Further, the ALJ did not properly address the findings of Dr. Wagner at the consultative examination in October 2013. The ALJ noted Plaintiff "demonstrated normal gait, station, and finger-to-nose-coordination" (Doc. 10-3 at 28), but failed to acknowledge that Dr. Wagner opined Plaintiff's reported difficulties with balance and vertigo were evidenced during the examination. (Doc. 10-9 at 74) In addition, Plaintiff had a positive Roberg test and "some lurching as he began attempting to walk on toes and heels and was not required to finish." (*Id.* at 76) Dr. Wagner observed that Plaintiff had "tremors in the hand," though he could touch his fingertips to his thumbs and complete a finger-to-nose test. Despite these abilities, Dr. Wagner opined Plaintiff's dexterity was impaired and he would "have difficulty with fingering, given the tremors in [the] hands." (*Id.* at 75, 78) Seemingly, the ALJ ignores this conclusion of Dr. Wagner in rejecting the credibility of Plaintiff's subjective complaints.

The ALJ also did not identify examinations that were "negative for tremors and gait disturbance." (*See* Doc. 10-3 at 28) The ALJ cited pages 10, 12, and 17 of Exhibit 12F in support of his conclusion that Plaintiff did not exhibit tremors at all examinations. (*See id.*) These examinations were conducted by Maricela Estrada, PA-C, in August and December 2014. (Doc. 10-11 at 10, 17 [Exh. 12F, pp. 9, 16]) In August 2014, Ms. Estrada observed in her examination findings that Plaintiff's fine motor skills were not normal due to a "rest tremor." (Doc. 10-11 at 20 [Exh. 12F, p. 11) Thus, the ALJ skipped over the page in which Ms. Estrada indicated Plaintiff had a resting tremor—and chose instead to cite the treatment notes directly before and after this page. Similarly, the records from December 2014 indicated Plaintiff had a "[r]esting tremor" and a "positive" neurological exam due to incoordination. (*Id.* at 11-12 [Exh. 12 F, pp. 10-11]) Thus, the treatment records cited by the ALJ do not support his conclusion.

Finally, the medical record does not support the ALJ's assertion that there is no evidence of "any other symptom of Parkinson's disease." (*See* Doc. 10-3 at 27) Dr. Wagner believed Plaintiff had "some cogwheeling of the arms" in October 2013. (Doc. 10-9 at 74-75) Likewise, Dr. Chan observed that Plaintiff had cogwheel rigidity in October and November 2014. (Doc. 10-13 at 73-74)

Given the ALJ's misrepresentation of the cited medical evidence, objective medical record does not support the adverse credibility determination.

13

### 3. Conclusion

The ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958. Consequently, the reasons for set forth by the ALJ for rejecting Plaintiff's credibility concerning the severity of his tremors cannot be upheld by the Court.[2]

### B. The Residual Functional Capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments"—whether severe or not—when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

Plaintiff contends the ALJ erred in finding in the residual functional capacity that "he can use his hands for handling and fingering frequently." (*See* Doc. 14 at 10-12; Doc. 10-3 at 26) Plaintiff argues, " it is unclear how the ALJ came to this conclusion, or what medical evidence supports this limitation, as every single medical opinion regarding Plaintiff's physical limitations restricted his ability to handle only occasionally, opposed to frequently." (Doc. 14 at 10) According to Plaintiff, "the RFC is contradicted by the opinions from every medical expert" and the ALJ "arbitrarily determined Plaintiff could frequently finger and handle." (*Id.*)

In response, Defendant argues that Plaintiff's argument fails because the RFC is an administrative decision, and "[t] Commissioner, and not any physician, has the ultimate responsibility

---

[2] The Court notes the Commissioner identifies additional evidence and reasons for rejecting Plaintiff's credibility, such as Plaintiff's compliance with treatment, and a failure to seek treatment. (See Doc. 18 at 17-18) However, these reasons were not addressed by the ALJ, and the Court is "constrained to *review* the reasons the ALJ asserts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the Court cannot engage in "post hoc rationalizations that attempt to intuit what the [ALJ] might have been thinking").

for assessing a claimant's RFC." (Doc. 18 at 23, citing 20 C.F.R. § 416.946(c). Defendant observes that the Ninth Circuit determined "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." (*Id.*, quoting *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001)) According to Defendant, "the ALJ articulated specific reasons, supported by substantial evidence, for finding that despite Plaintiff's tremor, greater limitations in fingering and handling were not warranted." (Doc. 18 at 23) Defendant observes:

> The ALJ acknowledged Plaintiff's tremor, but also noted negative neurological findings and ability to perform activities that required hand and finger dexterity, as well as evidence suggesting that Plaintiff exaggerated the tremor during a consultative examination (AR 26-27). The ALJ reasoned that a limitation to frequent use of hands for fingering and handling accounts for Plaintiff's allegations without compromising consistency with the rest of the record (AR 25-27). The ALJ considered the opinion evidence of record, and found that it did not warrant inclusion of greater limitations in the RFC (AR 27).

(Doc. 18 at 23) Defendant maintains the ALJ was "not required to accept all limitations included in medical opinions, and may exclude limitations that are not supported by the evidence." (*Id.*, citing *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004))

Following examinations and reviews of the record, physicians repeatedly determined that Plaintiff had significant manipulative limitations, including occasional fingering or fine manipulation. Dr. Wagner opined that "[b]ased on [his] objective findings," Plaintiff "could "reach and handle but [was] going to have difficulty with fingering, given the tremors in [the] hands." (Doc. 10-9 at 78) As a result, Dr. Wagner concluded Plaintiff's fingering should "be limited to occasionally." (*Id.*) Dr. Hicks reviewed the record in November 2013, and determined that due to "Parkinson's disease and right radial head fracture," Plaintiff was limited to performing "light [work] with only occasional push [and] pull" with the right arm and "only occasional fine manipulation bilaterally." (Doc. 10-4 at 14) Likewise, Dr. Pham concluded that Plaintiff had manipulative limitations, and was limited with the right upper extremity to occasional handling and frequent fingering; and with the upper left extremity, he could do and occasional fingering. (*Id.* at 33-34) Evidently, the ALJ reviewed the records and objective findings, and rejected these conclusions to determine Plaintiff could handle and finger— perform gross manipulation and fine manipulation— *frequently* rather than occasionally, with both hands.

15

Importantly, it is well-settled law that an ALJ may not render his own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms"). "When an ALJ rejects all medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence is less likely." *See Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb.1, 2011). For example, this Court determined an ALJ erred where all medical opinions were rejected before the ALJ formulated the RFC. *See Perez v. Comm'r of Soc. Sec.*, 2018 WL 721399 (E.D. Cal. Feb. 6, 2018).

The ALJ rejected all medical opinions when formulating Plaintiff's RFC. Though Dr. Pham opined Plaintiff could perform frequent fingering with the right upper extremity, the opinion also limited Plaintiff to *occasional* fingering with the left upper extremity. All other physicians—and the physician's assistant who treated Plaintiff— indicated Plaintiff had greater manipulative limitations, indicating Plaintiff could only perform fine manipulation or fingering with the right hand on an occasional basis, at most. Without medical opinions to support the ALJ's conclusions, the RFC lacks the support of substantial evidence. *See Perez,* 2018 WL 721399 at *7-8; *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) (holding "the ALJ's conclusions are not supported by substantial evidence" if an RFC is formulated without the findings of a physician). Thus, the ALJ erred in evaluating the record and assessing Plaintiff's RFC.

**C.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S.

12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred when setting forth the basis for rejecting the credibility of Plaintiff's subjective complaints. Courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . .").

In addition, the RFC articulated by the ALJ lacks the support of substantial evidence in the record, and the matter should be remanded for further consideration.[3] *See Tackett*, 180 F.3d at 1102-03 (remanding the matter to the Social Security Administration for reconsideration after finding the ALJ erred by offering his own medical conclusion, which was not supported by any medical evidence); *Perez*, 958 F.2d at 446 (finding that where the ALJ offered any opinion that was not supported by the opinions of a physician, "it is necessary to remand for the taking of further functional evidence").

///

---

[3] Though Plaintiff challenged the manipulative limitations identified by the ALJ, the Court notes the RFC also does not include the postural and environmental limitations identified by physicians, which were rejected by the ALJ.
Following the consultative examination, Dr. Wagner concluded Plaintiff should never balance and "should avoid working around unprotected heights and heavy machinery, given the positive Romberg test." (Doc. 10-9 at 78-79). The non-examining physicians also opined Plaintiff should "[a[void even moderate exposure" to environmental hazards, and should never climb ladders, ropes, or scaffolds. (Doc. 10-4 at 13-14, 32-33) Upon remand, the ALJ should re-evaluate the evidence related to postural and environmental limitations, and clearly set forth any reasons for rejecting the limitations identified by the physicians.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ failed to apply the correct legal standards and erred in his evaluation of Plaintiff's subjective complaints and the medical record. Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate regarding Plaintiff's physical RFC, it offers no findings on the remaining issue raised by Plaintiff in his opening brief.

Accordingly, the Court **ORDERS**:

1. Plaintiff's motion for summary judgment (Doc. 14) is **GRANTED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Harold Wayne Mallard and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **February 8, 2019**         **/s/ Jennifer L. Thurston**
                                    UNITED STATES MAGISTRATE JUDGE